so far as the safety of the Kennedy was concerned, between having this lookout at the bow and one at the stern. The captain could have taken care of ordinary matters at the bow, but the danger to be apprehended was from traffic carelessly violating the rule of the stream, and coming up the wrong side, such as the Transfer No. 14 was, and such as was often done in a crowded stream like the East River. Another's carelessness is to be apprehended more often than one's own.

The captain of the Kennedy says that his bow was about 30 feet from the pier end. The tug Kennedy is about 100 feet long. Consequently, taking these minimum figures and allowing for the angle, if a lookout had been placed at the stern, he would have been approximately 130 feet out in the stream. Even these figures would have afforded the lookout a plain view of the Transfer No. 14 coming up and around the Burro, even assuming that she was little more than that distance from the pier ends of 5 and 4. The Transfer No. 14 saw the Kennedy. I also believe the Kennedy was somewhat further out.

As it was, with the lookout at the bow, close to the pier, and the Burro and tow hiding from him in that position the fast-approaching Transfer No. 14, outside of her, it was not until the Transfer No. 14 fully appeared close to the Kennedy that this lookout saw her and shouted his warning, too late to avoid a collision, although the captain of the Kennedy immediately commenced a maneuver that, with a few seconds' earlier notice of his danger, which a lookout at the stern could have given, undoubtedly would have avoided a collision.

Having this recognized duty in mind as to having a lookout in a proper place, can it be said that it was a prudent and ordinarily safe thing for the Kennedy to do not to have a lookout at the stern of the Kennedy under such circumstances? I do not believe that it was, and I believe a failure to have such a competent lookout at the stern was carelessness on the part of the Kennedy, and that this carelessness directly contributed to the collision, which was the cause of the injury to the Kennedy, and completed the proximate cause of the injury to libelant's scow.

In view of the foregoing, I direct a decree in favor of libelant Gregway against the Transfer No. 14 and the tug Kennedy jointly. As to the damages to the Kennedy, I direct that same be divided, between the Kennedy Towing Line, Inc., and the New York, New Haven & Hartford Railroad Company.

---

James Gregway, Libelant-Appellee, v. Steam Tug MARY J. KENNEDY, Her Engines, etc.; Kennedy Towing Line, Inc., Claimant-Appellant; Steam Tug Transfer No. 14, Her Engines, etc.; New York, New Haven & Hartford Railroad Company, Claimant-Appellee.

Kennedy Towing Line, Inc., Libelant-Appellant, v. Steam Tug TRANSFER NO. 14, Her Engines, etc.; New York, New Haven & Hartford Railroad Company, Claimant-Appellee.

(Circuit Court of Appeals, Second Circuit. February 15, 1926.)

Nos. 180, 181.

Appeals from the District Court of the United States for the Eastern District of New York.

Foley & Martin, of New York City, for appellant.

Macklin, Brown & Van Wyck, of New York City (Paul Speer, of New York City, of counsel), for libelant-appellee.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt and James McKown, Jr., both of New York City, of counsel), for claimant-appellee.

Before ROGERS, HOUGH, and MACK, Circuit Judges.

PER CURIAM. Decrees (11 F.[2d] 169) affirmed.

---

## STAMP v. UNION STEVEDORING CORPORATION, with other cases.

(District Court, E. D. Pennsylvania. November 28, 1925.)

No. 11626.

**I. Courts ⚖➙300—Where suitor elects to sue at common law instead of in admiralty, case, for jurisdictional purposes, will be treated as other common-law actions, including requirement of diversity of citizenship.**

Where suitor elects to sue at common law instead of in admiralty, case, for jurisdictional purposes, will be treated as are other common-law actions, including requirement of diversity of citizenship to give federal court jurisdiction.

**2. Action ⚖➙32—Under Pennsylvania statutes, distinction between actions in contract and tort, for purpose of determining treatment of such causes, remains.**

Under Practice Act Pa. May 14, 1915 (P. L. 483; Pa. St. 1920, §§ 17181–17204), abolishing formal distinctions between declarations in actions ex contractu and ex delicto, distinction between such actions for purpose of determining treatment of such causes, as well as between evidentiary and ultimate facts, and facts and conclusions of law, remains.